PRESENT:   All the Justices

HEATHER ELLISON ZAUG
                                      OPINION BY
v.    Record No. 121656        JUSTICE WILLIAM C. MIMS
                                  February 28, 2013
VIRGINIA STATE BAR, EX REL.
FIFTH DISTRICT - SECTION III COMMITTEE


          FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                 Lon Edward Farris, James F. Almand, and
                 John J. McGrath, Jr., Judges Designate

     In this appeal of right from a judgment entered by a

three-judge circuit court in a disciplinary hearing, we

consider whether an attorney violated Rule 4.2 of the Virginia

Rules of Professional Conduct.

          I.    BACKGROUND AND MATERIAL PROCEEDINGS BELOW

     Heather Ellison Zaug is an attorney licensed to practice

law in the Commonwealth of Virginia and admitted to the Bar of

this Court.  In April 2010, Zaug and Richard L. Nagle, her

partner, represented a doctor in a medical malpractice action

brought by Ian, Yanira, and Vincent W. Copcutt.  The Copcutts

were represented by Judith M. Cofield.

     On April 15, Yanira Copcutt ("Yanira") telephoned the

firm's office to speak with Nagle.  He could not take the call

because he was on his way to depose Vincent Copcutt

("Vincent").  A staff member transferred the call to Zaug.

Zaug admits that she knew the call concerned Vincent's

deposition but she denies knowing who the caller was when she answered. There is no recording or transcript of the call.

The parties agree that Yanira was distraught. According to Zaug, the call lasted approximately 60 seconds. It is undisputed that Yanira told Zaug about the toll the litigation was taking on her family and that Vincent's deposition needed to be cancelled. According to Zaug, she apologized and told Yanira that she could not help her and that Yanira needed to contact Cofield.

According to Zaug, she then attempted to terminate the call but Yanira resisted "with an outpouring of emotion." Yanira said that she had been unable to reach Cofield and that she wanted to speak to Nagle. Zaug reiterated that "[w]e can't help you. You need to try to reach Ms. Cofield. I'll try to contact Mr. Nagle and they'll have to sort this out." She then terminated the call.

Another attorney at the firm witnessed part of the call. The witness testified that it lasted about 30 seconds from the time Zaug realized who the caller was and corroborated her recollection of her side of the conversation from that point forward.

According to Yanira, Zaug addressed her by name when she answered the call, saying, "Hi, Mrs. Copcutt." Yanira told Zaug that Vincent's deposition needed to be cancelled. When

2

Zaug asked what was wrong with the deposition, Yanira started crying, rambling, and describing the emotional difficulties associated with the injury caused by Zaug's client's alleged malpractice. Further, Yanira told Zaug that she wanted to dismiss the lawsuit.[1]

After Vincent's deposition, Yanira told Cofield about her conversation with Zaug. Cofield thereafter filed a complaint with the Virginia State Bar ("the State Bar") in which she set forth Yanira's account of the conversation. The State Bar issued a charge of misconduct alleging that Zaug had violated Rule 4.2 of the Virginia Rules of Professional Conduct.

The charge of misconduct was heard by the Fifth District Section III Committee pursuant to Paragraph 13-16 of Part 6, Section IV of the Rules of this Court. After a hearing, the district committee issued a determination that Zaug's conduct constituted a violation of the Rule. The district committee imposed the sanction of a dismissal de minimis.

Zaug appealed the district committee's determination to the circuit court pursuant to Paragraph 13-17(A) of Part 6,

---

[1] Yanira testified at a hearing to disqualify Zaug as counsel in the underlying litigation. Nagle objected that her description of Zaug's statements was inadmissible hearsay. On the basis of Cofield's response that the statements were not offered for the truth of the matter asserted, the circuit court overruled the objection. Accordingly, the parties to this appeal dispute the evidentiary value of Yanira's testimony for the purpose of the disciplinary proceeding. For the reasons stated herein, we do not address this question.

Section IV of the Rules of this Court.  Sitting by designation pursuant to Code § 54.1-3935(B), a three-judge panel of the court affirmed the findings of the district committee and the sanction of a dismissal de minimis.  Zaug perfected a timely appeal of right from the court's judgment pursuant to Code § 54.1-3935(E) and Rule 5:21(b)(2)(ii).

## II. ANALYSIS

When we review a lawyer discipline proceeding, "the State Bar has the burden of proving by clear and convincing evidence that the attorney violated the relevant Rules of Professional Conduct."  Weatherbee v. Virginia State Bar, 279 Va. 303, 306, 689 S.E.2d 753, 754 (2010) (citing Barrett v. Virginia State Bar, 272 Va. 260, 268 n.4, 634 S.E.2d 341, 345 n.4 (2006); Blue v. Seventh District Committee, 220 Va. 1056, 1062, 265 S.E.2d 753, 757 (1980); Seventh District Committee v. Gunter, 212 Va. 278, 284, 183 S.E.2d 713, 717 (1971)).

> We conduct an independent examination of the entire record.  We consider the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the Bar, the prevailing party in the trial court.  We accord the trial court's factual findings substantial weight and view those findings as prima facie correct.  Although we do not give the trial court's conclusions the weight of a jury verdict, we will sustain those conclusions unless it appears that they are not justified by a reasonable view of the evidence or are contrary to law.

4

*Id.* at 306, 689 S.E.2d at 754-55 (quoting *Anthony v. Virginia State Bar*, 270 Va. 601, 608-09, 621 S.E.2d 121, 125 (2005) (internal quotation marks and citation omitted)). The Virginia Rules of Professional Conduct are Rules of this Court. *See* Code § 54.1-3909. The interpretation of such Rules is a question of law we review de novo. *LaCava v. Commonwealth*, 283 Va. 465, 469-71, 722 S.E.2d 838, 840 (2012).

Rule 4.2 of the Virginia Rules of Professional Conduct states that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." The commentary provides guidance for interpreting the scope and meaning of the Rule. Comment 3 states,

> [t]he Rule applies even though the represented person initiates or consents to the communication. A lawyer must *immediately* terminate communication with a person if, after commencing communication, the lawyer learns that the person is one with whom communication is not permitted by this Rule. A lawyer is permitted to communicate with a person represented by counsel without obtaining the consent of the lawyer currently representing that person, if that person is seeking a "second opinion" or replacement counsel.

5

(Emphasis added.) Further, Comment 4 states, in relevant part, "This Rule does not prohibit communication with a represented person . . . concerning matters outside the representation."

Viewed in the light of the commentary, it is clear that the Bar must prove three separate facts to establish a violation of the Rule: (1) that the attorney knew that he or she was communicating with a person represented by another lawyer; (2) that the communication was about the subject of the representation; and (3) that the attorney (a) did not have the consent of the lawyer representing the person and (b) was not otherwise authorized by law to engage in the communication. While the first two facts may occur in any order, both must occur before an attorney violates the Rule.

Zaug admits that she was aware of the subject of the telephone call when she answered it, and this is reflected in the district committee's factual findings. However, the record does not disclose when she became aware that the caller was a represented person. Although Yanira testified at the hearing on her motion to disqualify counsel that Zaug addressed her as Mrs. Copcutt when she answered the call, thereby indicating Zaug knew the identity of the caller at the time she answered, Zaug denied knowing the identity of the caller until Yanira described the emotional toll the litigation was having on her family.

6

The circuit court made no factual findings and merely affirmed the district committee's determination. However, the district committee made no finding resolving this dispute of fact. To the contrary, the district committee found only that Zaug "was aware she was speaking with Copcutt either at the time she took the telephone call or concomitantly therewith." We are unable to decipher the meaning of this finding. "Concomitantly" means "in a concomitant manner." Webster's Third New International Dictionary 471 (1993). "Concomitant" means "accompanying or attending esp[ecially] in a subordinate or incidental way[;] occurring along with or at the same time as and with or without a causal relationship." Id.

Accordingly, the finding does not determine whether Zaug knew the identity of the caller when she answered or soon thereafter. Consequently, this finding does not answer the question of when Zaug knew both (a) the identity of the party with whom she was communicating and (b) the subject of the communication.[2] Further, at oral argument, the State Bar conceded that there was no evidence of how much time elapsed between the instant Zaug knew both pieces of information and the end of the call.

---

[2] The district committee found that Zaug knew Copcutt was a represented person and that Zaug neither had Cofield's consent nor was authorized by law to engage in the communication. Those facts are not in dispute.

7

Nevertheless, "[w]e conduct an independent examination of the entire record." Weatherbee, 279 Va. at 306, 689 S.E.2d at 754. Zaug testified that she answered, "This is Heather, how can I help you?" The caller responded, "I need to speak with Mr. Nagle. The deposition needs to be cancelled." Nonplussed by the response, Zaug then said, "This is Heather Zaug. I work with Mr. Nagle on the case. Who is this? How can I help you?" At that point, according to Zaug, Yanira began her emotional outburst, stating that the litigation was too much for her family. Zaug then knew the identity of the caller.

According to Zaug, she then said, "I'm sorry. I cannot help you. You need to try to speak with Ms. Cofield. Have you tried to reach Ms. Cofield?" Yanira's emotional outpouring continued for an unspecified number of seconds before Zaug concluded the call by stating, "I'm sorry. We can't help you. You need to try to reach Ms. Cofield. I'll try to contact Mr. Nagle and they'll have to sort this out." Zaug's witness testified that this interval lasted no longer than 30 seconds. The dispute between Zaug and the State Bar focuses on this uncertain period of time.

Both parties argue the meaning and intent of the word "immediately" in Comment 3. The State Bar argues that Zaug violated the Rule when she failed to terminate the call by hanging up during Yanira's emotional outburst. Zaug argues

8

that such conduct would violate the principles of professionalism which infuse and imbue the proper practice of law.  "Immediately," she contends, does not mean "instantaneously," and the Rule does not obligate an attorney to hang up on a represented person without regard to courtesy.  We agree with Zaug.

In the course of being admitted to the Bar of this Court, every attorney swears the following oath:

> Do you solemnly swear or affirm that you will support the Constitution of the United States and the Constitution of the Commonwealth of Virginia, and that you will faithfully, honestly, professionally, and courteously demean yourself in the practice of law and execute your office of attorney at law to the best of your ability, so help you God?

(Emphasis added).  See also Code § 54.1-3903.

Further, the State Bar publishes principles of professionalism on its website.  The preamble states,

> From Thomas Jefferson to Oliver Hill, Virginia lawyers have epitomized our profession's highest ideals.  Without losing sight of what lawyers do for their clients and for the public, lawyers should also focus on how they perform their duties. In their very first professional act, all Virginia lawyers pledge to demean themselves "professionally and courteously."

Virginia State Bar, Principles of Professionalism, http://vsb.org/pro-guidelines/index.php/principles/ (last visited Jan. 10, 2013).  The principles state that, "In my conduct toward everyone with whom I deal, I should [r]emember

9

that I am part of a self-governing profession, and that my actions and demeanor reflect upon my profession," and "I should [t]reat everyone as I want to be treated — with respect and courtesy." Id.

The Virginia Rules of Professional Conduct are precisely what they are described by their title to be: rules of professional conduct. They exist to further, not to obstruct, the professionalism of Virginia attorneys. Professionalism embraces common courtesy and good manners, and it informs the Rules and defines their scope. Accordingly, we will not construe the Rule to penalize an attorney for an act that is simultaneously non-malicious and polite.

The State Bar argues that to permit Zaug's conduct creates a so-called "distraught caller exception" or a "60-second call exception" to Rule 4.2, obscuring an otherwise bright-line rule of ethical conduct. We agree with the State Bar that attorneys must understand that they are ethically prohibited from communicating about the subject of representation with a person represented by another attorney unless they have that attorney's consent or are authorized by law to do so. The Rule categorically and unambiguously forbids an attorney from initiating such communications and requires an attorney to disengage from such communications when they are initiated by

10

others.  But the Rule does not require attorneys to be discourteous or impolite when they do so.

In this case, it is undisputed that Zaug did not initiate the telephone call.  There is no evidence in the record, and the State Bar does not assert, that Zaug intended to gain advantage from it.  Likewise, there is no evidence that Zaug deliberately or affirmatively prolonged it.  On these specific and narrow facts, and construing Rule 4.2 to advance behavior that is both professional and ethical, we conclude that no violation occurred in this case.  For these reasons, we will reverse the judgment of the circuit court, vacate the sanction imposed, and dismiss the charge of misconduct.

<u>Reversed, vacated, and dismissed.</u>