PRESENT:  All the Justices

JARED RYAN JENKINS

                OPINION BY
v.  Record No. 240276      JUSTICE STEPHEN R. McCULLOUGH
                October 17, 2024
VIRGINIA STATE BAR
EX REL. EIGHTH DISTRICT COMMITTEE


FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
Robert M.D. Turk, Chief Judge Designate, Bruce D. Albertson and
F. Patrick Yeatts, Judges Designate


Jared Ryan Jenkins, a Virginia attorney, appeals from a disciplinary sanction imposed by

a three-judge panel.  The panel concluded that Jenkins had violated Rules 3.4 and 8.2 of the

Rules of Professional Conduct.  The panel suspended Jenkins' license to practice law for nine

months.  For the reasons that follow, we affirm the decision of the panel.

BACKGROUND

Jenkins, acting on behalf of certain beneficiaries of a trust, filed a motion to intervene in

the Circuit Court of Rockbridge County to stop the sale of property held by the trust.  Jenkins

contended that the circuit court was required to appoint a trustee prior to any sale.  The motion to

intervene stated that "[i]f these actions are allowed to stand, the citizens of Rockbridge County

will rightly question the rule of law."  The motion to intervene was filed against the backdrop of

prior litigation construing the trust.

At the hearing on the motion to intervene, Jenkins stated that "there is a procedure

literally in the statute to appoint a trustee to do this.  So if we're going to ignore this

statute . . . what other statutes are we going to ignore[?]"  The circuit court denied the motion to

intervene, concluding that it was not well founded.  The circuit court further found that "several

of the allegations made [by Jenkins] were false, insulting and offensive to counsel and to the

Court and were made without any basis in law or fact and were in violation of Section

8.01-271.1 . . . as the statements and allegations impugned the integrity of the Court and Judicial

system itself." The circuit court ordered Jenkins to pay the legal fees incurred by the opposing

party in defending the motion to intervene, in the amount of $4,000.

When Jenkins did not pay the fees, the circuit court issued a rule to show cause. Jenkins

filed a response to the rule to show cause in which he challenged the circuit court's jurisdiction

to proceed. Jenkins wrote that "[i]nconvenience is no excuse for illegality. This case is rife with

unethical conduct." He asserted that "[t]he Court asserts authority to convey the property out of

a family land trust to the brother of a former Circuit Court judge" and that "[t]his wrongful and

unethical assertion of judicial power must be resisted." Jenkins further wrote that

> "[i]t is beyond comprehension that the Court . . . would act in this
> manner and not consider that [its] behavior was unethical . . . . It is
> much easier to infer that everyone involved believed that they were
> above the law and could achieve their desired ends without caring
> whether their manner of doing so was legal or not."

According to Jenkins, "[i]t appears that the Court felt this unethical collusion would be legal and

beyond question merely because he signed the orders approving it," and, "[r]ather than

addressing the concerns about the appearance of impropriety, the Court sanctioned me for having

the temerity to raise the issue. I was ordered to pay the attorney's fees charged for having to

support and justify their unethical and illegal behavior." Jenkins wrote that the circuit court was

guilty of "[i]gnoring the laws." According to Jenkins, "[i]f the Court will go to these lengths for

these purposes, it is reasonable to ask to what other lengths and for what other purposes the

Court has wrongfully attempted or will wrongfully attempt to use its self-assumed power."

Finally, Jenkins stated that "[j]eopardizing the public trust in the judiciary by wrongfully and

unethically pursuing the course of action taken in this case is dangerous."

2

The day before appearing in court on the show cause hearing, Jenkins emailed members of the Rockbridge County Bar Association. In this email, he stated that the judge, "who we all know has little to no experience with the civil side of the court, would rather send me to jail than admit he was wrong," which "is dangerous to us all." He stated that the judge "has the authority to do this the right way, but he has chosen to do it the wrong way at every opportunity." Jenkins characterized the court's decisions as "tyranny" and "disqualifying." He exhorted his colleagues "to attend the hearing so that you can see the lengths [the judge] will go to when an experienced attorney in good standing questions his authority."

Following a show cause hearing, the circuit court held Jenkins in contempt, ordered him to serve 60 days in jail, ordered him to pay a daily fine until he purged his contempt, and required him to pay additional attorney's fees to the plaintiff. The circuit court later revoked Jenkins' privilege to practice in the Rockbridge County Circuit Court. Jenkins ultimately paid the fine.

A subcommittee of the Virginia State Bar certified the charges of misconduct against Jenkins. The Virginia State Bar then filed a complaint against Jenkins alleging that his conduct violated the Rules of Professional Conduct. A three-judge panel concluded that Jenkins had violated Rules 3.4 and 8.2 and suspended his license to practice law for nine months. Jenkins appeals from this decision.[1]

## ANALYSIS

Our standard of review in these matters is well established. In reviewing the Board's decision in a disciplinary proceeding, we conduct an independent examination of the entire record pertaining to the charge before us. *Pilli v. Virginia State Bar*, 269 Va. 391, 396 (2005).

---

[1] Although Jenkins appealed, he did not appear at oral argument.

"We consider the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the Bar, the prevailing party in the . . . proceeding." *Id.* "We accord the [panel's] factual findings substantial weight and view those findings as prima facie correct." *Id.* "Although we do not give the [panel's] conclusions the weight of a jury verdict, we will sustain those conclusions unless it appears that they are not justified by a reasonable view of the evidence or are contrary to law." *Id.*

Jenkins assigns the following three errors:

> [1] The court erred by not continuing the case until after the substantive underlying issues were decided by the Supreme Court of Virginia.

> [2] The court erred by not considering evidence relevant to Jenkins's affirmative defense.

> [3] The court erred because there was insufficient evidence to find Jenkins violated Rule 3.4 or 8.2 of the Virginia Rules of Professional Conduct.

Most of Jenkins' arguments appear to rest on the following premises: the circuit court was in error in ruling against him in the underlying case, in which Jenkins argued that the sale of property could not proceed without appointing a trustee, and, moreover, the circuit court lacked jurisdiction to proceed in this manner. Because the circuit court was without jurisdiction, Jenkins reasons, everything that flowed out of that case was void *ab initio*, and, moreover, Jenkins could not have infringed the Rules of Professional Conduct in challenging the judge's actions.

Like the three-judge panel, we reject Jenkins' foundational premises. As the panel observed, this disciplinary proceeding is separate from the merits of Jenkins' arguments in the motion to intervene. Rather, as a member of the panel aptly noted, the disciplinary proceeding was based on "the statements and the method that [Jenkins] used to communicate the dissent that

4

[Jenkins] had with the Judge and the language that [Jenkins] used . . . ." Even if the circuit court had erred in its legal ruling on the motion to intervene, or had proceeded without jurisdiction, it would not justify a violation of the rules governing an attorney's conduct. Litigation is to be conducted by educated and professional advocates who carry out their duties with civility and courtesy. Baseless insults and accusations are the antithesis of the decorum necessary for effective representation. Zealous representation can and should proceed with dignity and respect towards opposing counsel and the court. The possibility that Jenkins' position might be vindicated on appeal is unrelated to whether he violated the rules that governed his conduct. A lawyer who believes a judge has erred can seek relief by asking for reconsideration or through the appellate process. In short, the rules governing lawyers apply in all legal proceedings, irrespective of the boundaries of the tribunal's jurisdiction or counsel's belief that a judge's legal ruling is in error.

Turning to the first assignment of error, Jenkins contends that the three-judge panel erred in refusing to continue the case until the underlying issues raised in his motion to intervene were resolved on appeal.[2] Jenkins appears to believe that, had his legal position been vindicated on appeal, the disciplinary proceeding would have to be resolved in his favor. We review the decision to deny a motion for a continuance under an abuse of discretion standard. *Motley v. Virginia State Bar*, 260 Va. 251, 261 (2000). We have little trouble affirming the panel on this point. As noted above, the disciplinary proceeding is a separate proceeding. A lawyer is not privileged to violate the Rules of Professional Conduct, even if the trial court has allegedly

---

[2] At the hearing before the three-judge panel, Jenkins alluded to the fact that he had "asked for a continuance."

committed a legal error.  The panel committed no abuse of discretion in declining to continue the case.

Jenkins next argues that the panel erred in refusing to consider evidence that was relevant to his defense.  It is not clear from Jenkins' brief what evidence the panel refused to consider.  The transcript of the disciplinary proceeding reflects the panel's careful consideration of the evidence and Jenkins' arguments.  Although awkwardly phrased, the gravamen of Jenkins' assignment of error appears to be that Jenkins' statements and conduct were justified and made in good faith based on the purported error of the circuit court in ordering the sale of trust property without first appointing a trustee.  We cannot subscribe to Jenkins' reasoning.  Even if the circuit court had committed a legal error in ordering the sale of trust property, it would not excuse statements Jenkins made in violation of the rules that govern attorney conduct.  The panel considered all the evidence, and it properly rejected the flawed legal argument that Jenkins advances.

Finally, Jenkins asserts that the Bar failed to present evidence that he made any statement with reckless disregard for the truth and that the Bar failed to prove the absence of his good faith in making the statements.  Under Rule of Professional Conduct 3.4, "[a] lawyer shall not: . . . (d) knowingly disobey . . . a standing rule or a ruling of a tribunal made in the course of a proceeding, but the lawyer may take steps, in good faith, to test the validity of such rule or ruling."  Jenkins conceded that he disobeyed the sanctions order by refusing to pay the fine.  His justification for his failure to pay the fine – that the circuit court's ruling was erroneous and that the circuit court acted without jurisdiction – is without merit.

Rule of Professional Conduct 8.2 provides that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning

6

the qualifications or integrity of a judge." There is no question Jenkins actually made many scurrilous statements impugning the integrity of the judge. No evidence whatsoever supports Jenkins' assertion that the judge's behavior was corrupt or unethical. Jenkins certainly offered none. The panel could properly conclude on this evidence that the statements were made with knowledge of their falsity or with reckless disregard for their truth. Again, even if a judge commits a legal error – and in this instance, the appellate courts found no legal error[3] – that does not justify a violation of the ethical rules that govern lawyers' conduct.

CONCLUSION

For the foregoing reasons, the decision of the panel is affirmed.

*Affirmed.*

---

[3] Jenkins filed a petition for a writ of mandamus and prohibition challenging the underlying rulings. The Court of Appeals ruled against him and dismissed the petition. *Jenkins v. Circuit Court of Rockbridge County*, No. 1556-22-3 (Va. Ct. App. Oct. 19, 2022). The Court of Appeals separately upheld the circuit court's sanctions award and its decision on the underlying motion to intervene. *Jenkins v. Irvine*, Record No. 0099-23-3 (Va. Ct. App. Jan. 11, 2024) (finding the appeal "wholly without merit"). This Court refused petitions for appeal in both cases. *Jenkins v. Circuit Court of Rockbridge County*, No. 220756 (Va. Apr. 26, 2023); *Jenkins v. Irvine*, No. 240110 (Va. May 28, 2024); *Jenkins v. Irvine*, No. 230935 (Va. May 29, 2024).